## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| XAVIER WASHINGTON,<br><br>   *Plaintiff*,<br><br>  v.<br><br>TALLGRASS ENERGY, LP, WILLIAM R. MOLER, MARCELINO OREJA ARBURUA, GUY G. BUCKLEY, ROY N. COOK, THOMAS A. GERKE, WALLACE C. HENDERSON, MATTHEW J.K. RUNKLE, and TERRANCE D. TOWNER,<br><br>   *Defendants*. | Case No.: 1:20-cv-1458<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Xavier Washington ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this action against Tallgrass Energy, L.P. ("TGE" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). The Individual Defendants, together with the Company, are collectively referred to herein as "Defendants." Specifically, Defendants solicited stockholder approval in connection with the proposed acquisition of the Company by affiliates of Blackstone Infrastructure Partners, together with affiliates of Enagas, GIC, NPS and USS (collectively, "Blackstone"), through a proxy statement

filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.

2.      On December 16, 2019, Tallgrass issued a press release announcing that it had entered into a definitive agreement (the "Merger Agreement"), by which Tallgrass' stockholders will be entitled to receive $22.45 per share in cash (the "Merger Consideration") for each share of common stock they own ("Proposed Transaction").

3.      On January 21, 2020, in order to convince Tallgrass' public common stockholders to vote in favor of the Proposed Transaction, defendants issued materially incomplete and misleading disclosures in a Preliminary Proxy Statement (the "Proxy Statement") filed with the SEC in connection with the Proposed Transaction. Specifically, the Proxy Statement is materially deficient and misleading because, *inter alia*, it contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by Tallgrass' financial advisor, Evercore Group L.L.C. ("Evercore" or the "Financial Advisor") regarding the Proposed Transaction. The omission of such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4.      For these reasons, as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

6.      Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play, substantial justice, and under Section 27 of the Exchange Act.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the New York Stock Exchange ("NYSE") within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Tallgrass common stock.

9.      Defendant William R. Moler ("Moler") is the Company's CEO is, and has been at all relevant times, a director of the Company.

10.     Defendant Marcelino Oreja Arburua ("Arburua") is, and has been since March 2019, a director of the Company.

11.     Defendant Guy G. Buckley ("Buckley") is, and has been since March 2019, a director of the Company.

12.     Defendant Roy N. Cook ("Cook") is, and has been at all relevant times, a director of the Company.

13.     Defendant Thomas A. Gerke ("Gerke") is, and has been at all relevant times, a director of the Company.

14.     Defendant Wallace C. Henderson ("Henderson") is, and has been since March 2019, a director of the Company.

15.     Defendant Matthew J.K. Runkle ("Runkle") is, and has been since March 2019, relevant times, a director of the Company.

16.     Defendant Terrance D. Towner ("Towner") is, and has been at all relevant times, a director of the Company.

17.     Defendants Moler, Arburua, Buckley, Cook, Gerke, Henderson, Runkle, and Towner, are collectively referred to as "Individual Defendants" and/or the "Board."

18.     Defendant Tallgrass, a Delaware limited partnership formed in 2015, is a publicly traded, growth-oriented limited partnership that owns, operates, acquires, and develops midstream energy assets in North America. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "TGE." The Company maintains its principal executive offices at 4200 W. 115th Street, Suite 350, Leawood, Kansas 66211.

19.     The Individual Defendants and Tallgrass are collectively referred to as "Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

20.     Tallgrass' operations are conducted through, and its operating assets are owned by, its direct and indirect subsidiaries, including Tallgrass Equity, LLC, a Delaware limited liability company ("TE"), in which Tallgrass directly owns an approximate 63.75% membership interest

as of December 31, 2019. Tallgrass is located in and provides services to certain key United States hydrocarbon basins, including the Denver-Julesburg, Powder River, Wind River, Permian and Hugoton-Anadarko Basins and the Niobrara, Mississippi Lime, Eagle Ford, Bakken, Marcellus, and Utica shale formations.

21.    On December 16, 2019, the Board caused Tallgrass to enter into the Merger Agreement.

22.    Pursuant to the terms of the Merger Agreement, Tallgrass' Class A stockholders will receive $22.45 in cash for each share of Tallgrass common stock they own.

23.    On December 17, 2019, Tallgrass issued a press release announcing the Proposed Transaction:

> "Tallgrass Energy, LP (NYSE: TGE) today announced that it has entered into a definitive merger agreement pursuant to which affiliates of Blackstone, Infrastructure Partners together with affiliates of Enagas, GIC, NPS and USS (collectively with Blackstone Infrastructure Partners, the "Sponsors") will acquire all of the publicly-held outstanding Class A Shares of TGE for $22.45 in cash per Class A Share.
>
> The transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary conditions, including approval of the merger by holders of a majority of the outstanding Class A and Class B Shares of TGE, voting together as a single class, inclusive of the approximately 44 percent of the total Class A and Class B Shares held by the Sponsors. Upon closing of the transaction, the Class A Shares will cease to be publicly traded. Pursuant to the merger agreement, TGE has agreed not to pay distributions during the pendency of the transactions contemplated by the merger agreement.

The Conflicts Committee of the Board of Directors of Tallgrass Energy GP, LLC, TGE's General Partner ("TGE GP"), after consultation with its independent legal and financial advisors, unanimously approved the transaction and determined it to be in the best interests of TGE and its public shareholders.

The Sponsors expect to fund the purchase of the Class A Shares with approximately $3 billion of equity, with the remainder of the funding necessary to consummate the transaction provided by debt."

## The Proxy Statement Misleads Tallgrass Stockholders by Omitting Material Information

24.     On January 21, 2020, Tallgrass filed the Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement is rendered misleading by the omission of critical information concerning the financial analyses performed by the Company's financial advisors, and other crucial issues. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Tallgrass' stockholders.

## Material Omissions Concerning the Financial Projections and the Financial Advisor's Financial Analyses

25.     Tallgrass engaged Evercore to render financial advisory and investment banking services to Tallgrass, including an opinion to the Tallgrass board as to the fairness, from a financial point of view, to the holders of Tallgrass common stock of the Merger Consideration. As the Proxy Statement notes, the financial advisor utilized financial information concerning the respective business and operations of Tallgrass was based on certain internal financial analyses and forecasts

prepared by or at the direction of the management of Tallgrass relating to its business. Specifically, the Proxy discloses that "in connection with the evaluation of a potential transaction, management of TGE provided multi-year projections to Evercore and the Conflicts Committee in connection with their consideration of the Transactions." Proxy at 37. These projections consisted of a Management Case and a Historical Growth Capital Expenditure Case. However, the Proxy Statement fails to disclose for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA; and (b) Cash Available for Dividends; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

26.     In addition to the material omissions identified above, the description in the Proxy Statement of Evercore's fairness opinions, and the underlying analyses, omits key inputs and assumptions of Tallgrass underlying these analyses. Without this information, as described below, Tallgrass' public stockholders are being misled as to what weight, if any, to place on the financial advisors' fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Tallgrass stockholders.

27.     Specifically, with respect to Evercore's Corporate Level—Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the after-tax free cash flows of Tallgrass utilized by Evercore in the analysis; (ii) the metric the perpetuity growth rates were applied to in order to derive Tallgrass's terminal value and quantification thereof; (iii) Tallgrass Development distributions (net of contributions and preferred interest) for 2019 to 2027; (iv) debt and cash projected as of January 1, 2020; (v) the number of outstanding Class A shares projected as of January 1, 2020; and (vi) quantification of the inputs and assumptions underlying the discount rates of 6.50% to 7.50%.

28.     Similarly, with respect to Evercore's Sum of the Parts—Discounted Cash Flow Analysis, the Proxy Statement fails to disclose the assumptions and inputs regarding the respective: (i) terminal values; (ii) estimated range of EBITDA exit multiples; (iii) range of discount rates; and (iv) range of perpetuity growth rates.

29.     With respect to Evercore's Corporate Level—Discounted Dividend Analysis, the Proxy Statement fails to disclose: (i) Evercore's basis for utilizing a terminal yield range of 8.0% to 12.0%; (ii) the metric the terminal yield range was applied to and quantification thereof; and (iii) quantification of the inputs and assumptions underlying the cost of equity range of 7.50% to 8.50% and cost of equity range of 11.0% to 13.0% based on the total expected market return.

30.     With respect to Evercore's Corporate Level-Peer Group Trading Analysis beginning on Page 44 and Sum of the Parts—Peer Group Trading Analysis beginning on Page 52, the Proxy fails to disclose: (i) all of the objective criteria that Evercore relied on in selecting the purportedly comparable companies; (ii) the individual trading multiples for the selected companies; and (iii) the enterprise valuations of each selected company.

31.     With respect to Evercore's Sum of the Parts—Precedent M&A Transaction Analysis, the Proxy fails to disclose: (i) all of the objective criteria that Evercore relied on in selecting the purportedly comparable transaction; (ii) the purchase price for the companies being acquired in each transaction; and (iii) the individual EBITDA multiples implied in each transaction.

32.     Finally, with respect to Evercore's Sum of the Parts—Peer Group Trading Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the corporations and partnerships analyzed by Evercore.

33.    The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following section of the Proxy Statement: (i) "*Opinion of Evercore*;" and (ii) "*Certain Financial Projections*."

34.    Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction if it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

35.    Plaintiff repeats and realleges each allegation set forth herein.

36.    As detailed herein, Defendants disseminated the false and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

37.    By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Tallgrass.

38.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants. The Proxy Statement misrepresented and omitted material facts, including material information concerning the actual intrinsic value of the Company. Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

39.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

41.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Tallgrass within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Tallgrass and their participation in and awareness of the Company's

business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43.    Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

44.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

45.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

46.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief,

including injunctive relief, in Plaintiff's favor and against Defendants as follows:

a) declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 19, 2020                           Respectfully submitted,

By: /s/ *Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
Sebastiano Tornatore (ST-0304)
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: stornatore@zlk.com

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)        *Attorneys for Plaintiff*
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*